IN RE JOHN SCHWARTING.

FILED JUNE 8, 1906.    No. 14,676.

1. **Dipsomaniac Law**: CONSTRUCTION. The provisions of chapter 82, laws 1905 (Comp. St. 1905, ch. 40, secs. 62-69), known as the "Dipsomaniac Law," are *in pari materia* with other laws providing for the detention, care and discharge of persons committed to the hospital for the insane, and must be construed in connection therewith.

2. **Discharged Patient.** A person who has been confined in the hospital for the insane under the provisions of said act until he has been cured may not be subjected to further restraint without new cause.

3. **Constitutional Law.** Section 7, ch. 82, laws 1905, *held* unconstitutional, as in violation of the right to personal liberty.

ORIGINAL application for writ of habeas corpus. *Writ denied.*

*O. A. Williams,* for applicant.

*Norris Brown, Attorney General,* and *W. T. Thompson,* for the state.

LETTON, J.

This is an application for a writ of habeas corpus, representing that John Schwarting is unlawfully deprived of his liberty by Dr. J. L. Greene, superintendent of the hospital for the insane at Lincoln, Nebraska, upon the charge of being an inebriate. It appears that the petitioner has been adjudged by the commissioners of insanity of Antelope county to be an inebriate, and to be a fit subject for custody and treatment in the hospital for the insane, and that he has been committed to such institution until he is cured, or for a period not exceeding three years. The petitioner contends that chapter 82, laws 1905, being "An act providing for the examination of dipsomaniacs, inebriates and persons addicted to the excessive use of morphine, cocaine or other narcotic drugs; for the detention, care and treatment of such persons and for their parole," is unconstitutional and void for the reasons that the law is contrary to the provisions of section 1 of the fourteenth amendment to the constitution of the United States, in that it abridges the privileges and immunities of citizens of the United States, and because it is a law denying to certain persons the equal protection of the law, and because it provides for imprisonment without due process of law and without trial by jury.

The act under which the petitioner was committed to the insane hospital is supplementary or additional to the statutes which provide for the treatment of the insane, and the establishment and maintenance of hospitals for the reception of that unfortunate class of individuals. It is an exercise of the paternal care of the state, designed for the benefit of those persons whose mental fibre has become so weakened by the excessive use of intoxicants and narcotics that they are unable to refrain from an undue indulgence in the same, and in whom the craving has become so intense as to be in the nature of a mental infirmity. From an early period the law has assumed the care and protection of the property of persons who have become unfit, on account of excessive drinking or debauchery, to control or manage the same, to their own detriment or that of the public. This jurisdiction is assumed as a part of the duty of the state to protect society from the burden which might be imposed upon it if, by the improvidence of the individual, he or his family should be so reduced in circumstances as to become a public charge. Comp. St. 1903, ch. 34, secs. 17, 21, 40 (Ann. St. 5387, 5391, 5410). This act extends this care to the person as well as to the property of the defective individual, and is designed to protect both the individual himself, and other persons who may be exposed to injury from his conduct, from the consequences which may reasonably be anticipated if he should be left at liberty to gratify his abnormal cravings. But this power should be exercised with great caution and only upon such a state of facts being shown as would justify the forcible intervention of the state for the protection of persons and property. "While the state should take compassionate charge of any who are dangerous to themselves or others, it is equally bound to protect the personal rights and liberties of every harmless and law-abiding citizen, capable of taking care of himself, his family, and his property, however weak and unfortunate he may be in other respects." *State v. Ryan,* 70 Wis. 676.

The power conferred in the first place upon the commis-

sioners of insanity is great, and the responsibility is great in proportion. The right to liberty is sacred, and should not be taken from any person under the provisions of this act without careful investigation and just and impartial consideration of the testimony, and unless the facts shown are serious enough in nature to warrant detention for treatment, he should not be committed. The act is for the dipsomaniac and inebriate, not for the occasional drinker, even though his drinking may result in intoxication. The first section of the act provides that these patients "shall be admitted, detained, cared for and treated in the Nebraska hospital for the insane;" and by the second section it is provided that "the commissioners of insanity, in each organized county of the state, shall have cognizance of all applications for admission to the hospital on behalf of such persons and shall have the same powers and exercise the same jurisdiction as are conferred upon them in the case of an insane person." Further provisions of the act provide for applications for the admission of patients, and the examination and commitment to the hospital. These provisions are examined and set forth in the recent case of *In re Simmons, ante,* p. 639, in which case it was held that, when a citizen is charged with being a dipsomaniac or inebriate, there must be a trial and findings of fact, and a record of the trial and findings kept with sufficient formality to show the jurisdiction of the commissioners in the premises, and to show the action that was taken by the commissioners upon the complaint, and that the commissioners found the facts to exist that would require such commitment. The act further provides for the treatment of the patient in a separate ward at the hospital and for the nature of the treatment to be given. Section 7 of the act provides in substance that any patient whom the superintendent of said hospital believes to be cured may be paroled upon certain conditions, among which are that the patient sign a written pledge agreeing to refrain from the use of all intoxicating liquors as a beverage, and from the use of morphine, cocaine and narcotic drugs during the

period of his commitment, and shall avoid frequenting places and the association with people tending to lead him to the same, and requires him to make written reports on the first of each month to the fact that he has not during the past month in any respect violated any of the terms of his parol, which reports must be investigated and approved by the clerk of the commissioners of insanity of the county in which the patient resides, and if he fails at any time to make such report or to fulfil all of its conditions upon which the parol was granted, he may, without any further proceeding whatever, and on the written order of the superintendent of the hospital, be taken and returned to the hospital, there to be detained and treated as before.

The petitioner contends that the act is penal in its nature, because it provides for a commitment for a definite number of years and that, when cured, he can only be released upon the performance of the conditions above set forth; that he may arbitrarily be returned without process of law upon the whim of the superintendent, and that the act therefore violates the constitutional provisions safeguarding the liberty of the person. We are convinced that there is much merit in these strictures upon that portion of the law which provides for the partial restraint of the patient after he has been cured, and which provide that he may be returned to the hospital, without further procedure, on the written order of the superintendent. The law is not enacted to punish crime, and is by no means penal in its nature. While a period is fixed beyond which the detention may not go, this term is fixed with the idea that, if the patient cannot be cured within the space of three years, his case is not capable of remedy by such treatment and he should not be further detained. The time of detention is fixed in the interests of liberty, and not as a term of imprisonment or confinement as a punishment. But, while this is true, we know of no power residing in the legislature to impose restraint upon the personal liberty of an indi-

vidual after he has been restored to health and to the
control of his appetites by the treatment afforded him
under the provisions of the act. When he is cured he
stands upon an equality with all other citizens. The
legislature, however beneficent its motives may be, is
restrained by the provisions of the constitution from in-
terfering with his personal liberty, and, in so far as these
provisions of section 7 provide for the restraint of per-
sons who have been cured, they are in conflict with the
constitution and must fall.

It is further contended that an inebriate has no right
by statute for a retrial anywhere as to whether he is an
inebriate, and that he has neither appeal, habeas corpus,
nor error to protect his rights. We think, however, that
counsel overlooks the fact that this act must be read in
connection with the provisions of the act for the govern-
ment of the hospital for the insane, which defines the
legal relations of insane persons and provides for their
care and protection. Comp. St. 1903, ch. 40, secs. 1-58
(Ann. St. 9590-9647). The act provides that all per-
sons in the insane hospital shall be regarded as standing
on an equal footing, and that upon a statement in writ-
ing, verified by affidavit, addressed to a judge of the dis-
trict court for the county in which the hospital is situ-
ated or of the county in which any persons confined in
the hospital has his or her legal settlement, alleging that
such person is not insane and is unjustly deprived of his
or her liberty, a commission shall be appointed by the
judge, who shall proceed to the hospital and investigate
the facts; that such commission may be repeated not
oftener than once in six months. The act further pro-
vides that all persons confined as insane shall be entitled
to the benefit of the writ of habeas corpus, and a later
act provides that every inmate of the hospital shall be
allowed to write letters when and whenever he or she
desires, and to any person he or she may choose. While
counsel contend that the act which is now assailed has
none of these necessary and humane provisions, we are

of opinion that, since they are to be found in the general laws with reference to the government and management of the hospital for the insane, it was unnecessary to repeat them in a subsequent act which merely adds another class of unfortunates to that which was formerly entitled to treatment in the institution.

It is contended that the provisions with reference to the release of persons is inadequate, but if the unconstitutional restraints with reference to the liberty of the patient after he has been cured, which are imposed by section 7, are exercised from the act, the patient has the same remedy which is provided for all other persons unlawfully restrained of their liberty. The commitment provides for the detention in the hospital until the patient is cured. The general law relating to the control of the hospital provides that any person who is cured shall be immediately discharged by the superintendent. The detention therefore of a person who is cured would be an unlawful restraint, and the patient thus restrained can be released by the ordinary remedies provided by law for such purpose.

No law conceived by human minds can be said to be perfect in all details, and this act is no exception to the rule. Its purpose is a good one, and it is intended to benefit the unfortunate individuals described in the first section thereof, as well as to protect society in general from the evils flowing from the reckless conduct of inebriates. Whether or not in its operation it will attain the results desired is a question which the future alone can determine, and whether or not it shall continue in effect remains a matter for legislative discretion. In so far, however, as its provisions are not violative of constitutional provisions, it is our duty to uphold the law. We are of the opinion that section 7 of the act, imposing conditions upon the discharge of a patient when cured, is an unlawful and unconstitutional restraint upon the liberty of a person and is beyond the power of the legislature to enact. We think, however, that the remainder

of the act, when considered in connection with the general act for the government of the hospital for the insane, is not subject to the complaint made by the petitioner.

The demurrer of the respondent is therefore sustained, and the application

DENIED.