(April 2, 1921.)

## In the Matter of the Application of C. K. HINKLE for a Writ of Habeas Corpus.

[196 Pac. 1035.]

POLICE POWER—CONSTITUTIONALITY OF STATUTE—JURISDICTION OF DISTRICT COURTS TO COMMIT DIPSOMANIACS AND INEBRIATES—CHARACTER OF PROCEEDINGS—ORDER OF COMMITMENT, HOW VACATED.

1. C. S., sec. 1191, which gives the district courts jurisdiction to hear and commit persons so far addicted to the use of narcotics as to have lost self-control, or who are dipsomaniacs or inebriates, to the insane asylums for treatment, is an exercise of the police power of the state.

2. These proceedings are paternal in character, and not criminal, and while analogous to the appointment of a temporary guardian, they are not guardianship proceedings within the meaning of art. 5, sec. 21, of the constitution, or in derogation of this provision, which gives probate courts original jurisdiction in matters of guardianship.

3. Statutes of this character are *in pari materia* with laws for the commitment of the insane, and for the protection and safety of the general public against the acts of irresponsible persons, and also have for their purpose the exercise of the power of the state to correct the habits of its citizens, when such habits have become a menace to the peace, comfort, good order and health of the state.

---

On validity of statute providing for commitment of inebriates, without their consent, to a public or private institution, see notes in 15 Ann. Cas. 964; Ann. Cas. 1917E, 359; 17 L. R. A., N. S., 984.

4. A commitment made by the district court under this statute, in accordance with its requirements, is valid until vacated by direct proceedings on the ground that the person does not belong to the class defined, or until it is shown that he has sufficiently recovered to be restored to liberty.

Original application to this court for a writ of *habeas corpus. Writ denied.*

A. L. Morgan, for Petitioner.

The original jurisdiction of the district court or a judge thereof is fixed by sec. 20, art. 5, of the constitution, and it is beyond the power of the legislature to extend such original jurisdiction so as to include any matter over which the probate court has been granted exclusive jurisdiction. (*Estate of McVay,* 14 Ida. 64, 93 Pac. 31.)

A proceeding in the nature of that outlined in sec. 1191, C. S., is paternal rather than criminal. (*State v. Ryan,* 70 Wis. 676, 36 N. W. 823; *In re Sharp,* 15 Ida. 120, 96 Pac. 563, 18 L. R. A., N. S., 886.)

The order of the court directing that the petitioner having lost the power of self-control be confined in the insane asylum has the effect of appointing a temporary guardian for the person of petitioner. (*In re Sharp, supra.*)

The probate court has exclusive jurisdiction over the appointment of gaurdians. (Sec. 21, art. 5, of the constitution; *In re Sharp, supra.*)

The proceeding does not come within the class known as "cases, both in law and in equity." (*Idaho Trust Co. v. Miller,* 16 Ida. 308, 102 Pac. 360; *Estate of McVay, supra.*)

Roy L. Black, Attorney General, and Dean Driscoll, Assistant, for Defendant.

The jurisdiction vests in the district court under art. 5, sec. 20, of the constitution, and not in the probate court under art. 5, sec. 21. (Sec. 1191, C. S.; *Ex parte O'Connor,* 29 Cal. App. 225, 155 Pac. 115.) Our district court has general jurisdiction over all matters not elsewhere

vested by the constitution. (*Toncray v. Budge,* 14 Ida. 621, 95 Pac. 26.)

Proceedings for the commitment of the insane to which this proceeding is analogous are matters of equitable cognizance. (14 R. C. L. 554; 22 Cyc. 1120.)

LEE, J.—This is an application to this court for a writ of *habeas corpus.* The petitioner, C. K. Hinkle, sets forth in his petition that he was on the twenty-second day of January, 1921, by the Hon. Edgar C. Steele, Judge of the district court of the second judicial district of the state of Idaho, in and for Latah county, under and by virtue of the provisions of C. S., sec. 1191, committed to the Northern Idaho State Insane Asylum at Orofino for a period of two years from the date of said commitment. The petitioner contends that his confinement under said commitment is unlawful, for the reason that it is in contravention of article 5, sections 20 and 21 of the constitution, which define the jurisdiction of district and probate courts.

C. S., sec. 1191, reads as follows: "Whenever it appears by affidavit to a magistrate of the county that any person within the county is so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or is subject to dipsomania or inebriety, he must issue and deliver to some peace officer for service a warrant directing that such person be arrested and taken before the district court of the county, or the judge thereof, for a hearing and examination on such charge . . . . the said court or the judge thereof must then inform him of the charge against him, and inform him of his right to make a defense against said charge and produce any witnesses in defense thereto. The judge must by order fix such time and place for the hearing and examination as will give a reasonable opportunity for the production and examination of witnesses . . . . the hearing and examination must be had in compliance with the provisions of C. S., secs. 1178, 1179, 1180, 1181 and 1182. The judge, after such hearing and examination, if he believes the per-

son is so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or is subject to dipsomania or inebriety, must make an order that he be confined in one of the state insane asylums, which shall be designated in said order, and the order must be accompanied by a written statement of the judge as to the financial condition of the patient, and of the person legally liable for his maintenance, as far as can be ascertained; such order and statement shall be in substantially the form provided by C. S., sec. 1184, for the commitment of insane persons. The said court or the judge thereof shall commit such person for a definite period, not to exceed two years; provided that he may be paroled or released under the same rules and conditions that the insane are paroled and released. Such person shall be delivered to said insane asylum to which he has been committed in compliance with the provisions of C. S., sec. 1185, providing for the commitment and deliverance of insane persons, . . . . ''

From the petition, return thereto, and admissions of counsel, it appears that all of the requirements of this section of the statute were complied with. He contends, however, that the proceedings under this statute are paternal rather than criminal; that the order of the court holding that the petitioner had lost the power of self-control, and directing that he be confined in the insane asylum, is in effect the appointment of a temporary guardian for his person; that the probate court has exclusive original jurisdiction over the appointment of guardians, under the provisions of article 5, section 21, of the constitution; and that said proceedings do not come within any class known as "proceedings both at law and in equity," as that term is used in article 5, section 20, of the constitution, which is as follows: "The district court shall have original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law."

Section 21 reads: "The probate courts shall be courts of record, and shall have original jurisdiction in all matters

of probate, settlement of estates of deceased persons, and appointment of guardians. . . . . ''

A consideration of the law as it existed at the time of the adoption of the constitution, with reference to guardianship matters and the commitment of the insane, may aid in determining the constitutionality of the statute in question.

C. S., sec. 1191, was enacted as chapter 56 of the Laws of 1913, page 166, to amend what is now C. S., article 2, chapter 52, title IX, entitled ''Charitable Institutions.'' This article prescribes the procedure for the commitment and confinement of the insane, as that term is commonly used and understood, with the exception of some minor changes, as the law was prior to the adoption of the constitution. This later amendment extends the general provisions of the commitment act to include persons ''so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or to be subject to dipsomania or inebriety.'' Manifestly, the law by its terms, prior to this amendment, conferred upon district courts and the judges thereof authority to hear and determine all questions pertaining to the commitment of persons ''so far disordered in mind as to endanger health, persons or property.'' Article 21, section 2, of the constitution continued in force ''all laws which are now in force in the territory of Idaho which are not repugnant to this constitution, etc.'' The territorial law, R. S., secs. 769–782, which conferred upon ''any judge of a court of record within the county'' jurisdiction to commit the insane, was within the powers of the territorial legislature to enact, because its power to confer jurisdiction upon the several courts was only limited by the acts of the Congress and the federal constitution. It is therefore clear that this law was not open to the objection that the territorial legislature exceeded its authority in giving the district courts concurrent original jurisdiction with probate courts in the commitment of ''persons so far disordered in mind as to endanger health, persons or property.''

Proceedings for the commitment of the insane since state-hood are usually conducted by probate courts, but district courts have continued to make commitments, and so far as we are advised, the constitutionality of this statute, vesting in such courts this power, has never been challenged. This may not be a very cogent reason in support of its constitutionality, but the statute does not appear to be so repugnant to any of the provisions of the constitution as to render it inoperative and void, and we therefore think it was continued in effect by article 21, section 2 of that instrument.

Evidently the territorial legislature, by giving the district courts jurisdiction in the matter of these commitments, did not regard such proceedings as being in effect the appointment of a guardian, or as being paternal, to such an extent that it conflicts with the exclusive original jurisdiction given to the probate courts for the "appointment of guardians for the person or estate, or either or both, of minors, or for the insane or mentally incompetent," as provided for in R. S., sec. 5770 et seq., which law relative to the appointment of guardians was also continued in force by the constitution.

Proceedings for the commitment of the insane, or of those addicted to the intemperate use of narcotics to such an extent that they have lost the power of self-control, or are subject to dipsomania or inebriety, within the meaning of C. S., sec. 1191, are not guardianship proceedings, within the meaning of said article 5, section 21, but a legitimate exercise of the police power of the state, which may be vested in the district courts or the judges thereof.

The limits of the police power of the state cannot be defined with precision. Its boundary lines cannot be determined by any general formula in advance. It is the power vested in the legislature by the constitution to make, ordain and establish all manner of wholesome and reasonable laws and ordinances, not repugnant to the constitution, that it may judge to be for the welfare of the state. It is a power that is sweeping and potential, and may be used to pre-

scribe, regulate and promote the health, peace, morals, education and good order of the people. (Cooley, Constitutional Limitations, 572; *Barbier v. Connolly,* 113 U. S. 27, 5 Sup. Ct. 357, 28 L. ed. 923; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. ed. 205, see, also, Rose's U. S. Notes; *Thorpe v. Rutland & Bur. Ry. Co.,* 27 Vt. 140, 62 Am. Dec. 625; *Territory v. O'Connor,* 5 Dak. 397, 41 N. W. 746, 3 L. R. A. 355.) This power is incapable of any exact limitation, because none can foresee the ever-changing conditions which may call for its exercise. (*Holden v. Hardy,* 169 U. S. 366, 18 Sup. Ct. 383, 42 L. ed. 780, see, also, Rose's U. S. Notes; *Re Ten-hour Law for Street Railway Corporations,* 24 R. I. 603, 54 Atl. 602, 61 L. R. A. 612; *State v. Kofines,* 33 R. I. 211, Ann. Cas. 1913C, 1120, 80 Atl. 432.)

The application of this power to new conditions may call for additional legislation, to require individuals, like members of a well-governed family, to conform their general behavior to the rules of propriety, "good neighborhood," and good manners; to be decent and inoffensive in their respective stations; to prevent a conflict of rights, and assure to each member of society an uninterrupted enjoyment of his own, in so far as is reasonable and consistent with a like enjoyment of rights by others. From time immemorial the state has found it necessary to confine persons "so far disordered in mind as to endanger health, persons or property"; and experience has demonstrated that it is equally as necessary, to preserve public order and prevent offenses against the state, to confine dipsomaniacs and inebriates, for similar reasons that require the confinement of the insane, because these conditions are only another form of insanity, requiring special treatment. (Tiedemann on Police Power, secs. 46 and 48.)

Proceedings for the commitment of the insane, under whatever form the insanity may arise, are paternal in character, and are not in any sense penal. In a manner they are analogous to guardianship proceedings, but there is nevertheless a difference which readily distinguishes them

from matters of guardianship, as that term is used in article 5, section 21. The real basis or foundation for the proceedings under C. S., sec. 1191, is the protection and safety of the general public against the acts of irresponsible persons, and, as stated, is predicated upon the general police power of the state. But they may also have for their purpose the exercise of the power of the state whereby it may take charge of persons so addicted to the intemperate use of stimulants and narcotics as to have lost their power of self-control, or to have become dipsomaniacs or inebriates, and force treatment upon them. It is the power whereby the state may control or correct the individual habits of its citizens, where such habits have become a menace to the peace, comfort, good order or health of the state. These proceedings do not involve a trial, but by analogy to the common-law proceedings in insanity cases, as the term is used and commonly understood, are merely an inquisition by way of special proceedings, the determination of which, as the law intends, is left largely to persons possessing the necessary learning and experience. (*Ex parte O'Connor,* 29 Cal. App. 225, 155 Pac. 115; *Ex parte Ah Peen,* 51 Cal. 280; *Ex parte Crouse,* 4 Whart. (Pa.) 9; *Prescott v. State,* 19 Ohio St. 184, 2 Am. Rep. 388.)

Statutes of this character, commonly called "dipsomaniac laws," are construable in connection with other laws for the determination, care and discharge of persons committed to hospitals for the insane, being *in pari materia* with such proceedings. (*In re Schwarting,* 76 Neb. 773, 108 N. W. 125; *Crocker v. State,* 60 Wis. 553, 19 N. W. 435.)

The inquest is not in any sense a criminal proceeding; the restraint of the person is not designed as punishment for an act done.

The closest analogy at common law to these inquisitions were the writs of *de idiota inquiriendo* and *de lunatico inquirendo,* which were analogous to proceedings for like purposes under our law, where the inquisition of insanity or idiocy of one was instigated with a view to committing him for safekeeping if he were found to be either a lunatic

or an idiot. Many mental diseases of a nature to impair the will have come to be recognized as curable, and are proper subjects of governmental cognizance; and proceedings to determine whether a person is of such unsound mind as to render him unable to care for himself and his property rights, or to make him dangerous to the public, are generally conducted summarily, without the intervention of a jury. (*Ex parte O'Connor, supra;* 3 Blackstone, 428; 1 Blackstone, 303–305.)

We agree with petitioner's counsel that these proceedings are paternal in character, and are in no sense penal, but we cannot agree with his contention that because article 5, section 21 gave to the probate courts exclusive original jurisdiction in guardianship matters, it thereby deprives the legislature of the power to vest in the district courts authority to administer this class of laws. The inquisition held under this statute is neither a case at law or in equity, nor the appointment of a guardian, within the meaning of those terms as used in article 5. The order of commitment is not a judgment or final determination of any of the issues of fact, so as to make the commitment *res judicata.* It authorizes the person to whom it is directed to detain the person so committed, and is not a denial of due process of law, because such person may require a judicial determination and a final judgment as to the right to be so detained, upon issues properly framed. It is a statutory proceeding, exercised solely as a police regulation, and does not call for the exercise of judicial power within the meaning of said article 5, but is an exercise of judicial functions which the legislature may confer upon any tribunal, in the exercise of the police power.

We therefore hold that C. S., sec. 1191, is constitutional, that this commitment made under its provisions and in accordance with its requirements is a valid exercise of the police power, and that such commitment will be lawful until vacated or set aside by appropriate proceedings showing that the petitioner does not belong to the class defined

by the statute, or that he is sufficiently recovered to be set at liberty.

The writ should be quashed, and the petitioner remanded to the custody of the superintendent of the Northern Idaho Insane Asylum, and the proceedings against such superintendent should be dismissed, and it is so ordered.

Rice, C. J., and Budge, McCarthy and Dunn, JJ., concur.