(No. 6716.   February 1, 1940.)

MARY HANSEN, Appellant, v. Dr. CHARLES R. LOWE, ASSOCIATED INDEMNITY CORPORATION, a Corporation, and NEW YORK CASUALTY COMPANY, a Corporation, Respondents.

[100 Pac. (2d) 51.]

A. S. Dickinson and Ariel L. Crowley, for Appellant.

J. H. Andersen and S. T. Lowe, for Respondents.

GIVENS, J.—April 29, 1931, appellant was committed to the insane asylum at Blackfoot (officially known as State Hospital South, sec. 64-201, I. C. A.) by a judge of the district court for Ada county. Appellant was held at the institution until October 3, 1937. At the time she was committed respondent, Dr. Charles R. Lowe, was medical superintendent of said hospital, and so continued until June 13, 1937.

May 31, 1938, appellant sued herein Lewis Williams as Commissioner of Public Health in charge of said hospital during the period of her incarceration, his bondsmen, Dr. Lowe

as medical superintendent, his bondsmen, and Mary G. Holland, matron at the institution during such period, for false imprisonment. January 5, 1939, when the case was called for trial, on plaintiff's motion the action was dismissed as against Lewis Williams, his bondsmen, and Mary G. Holland.

Upon trial of the cause the jury returned a verdict in favor of appellant and against respondent Lowe for $3,000, against his sureties, the Associated Indemnity Corporation for $2,640 and the New York Casualty Company for $360.

Judgment was entered January 7, 1939, and January 14, 1939, respondents served and filed motion for judgment notwithstanding the verdict, notice of intention to move for a new trial, and motion for a new trial, the latter as follows:

"Come now the defendants, and each of them, and move the Court to set aside the verdict rendered in the above entitled action and the judgment entered thereon and to grant a new trial in the above entitled cause, in the event that the Court refuses to grant a judgment on behalf of the defendants notwithstanding the verdict, for the reasons and upon the grounds stated and set forth in the Notice of Intention to Move for a New Trial filed herein.

"This Motion is based upon the minutes of the Court, the pleadings, records and files in said action, and the Reporter's notes of all of the proceedings had and taken at the trial of said Cause.

"Dated this 14th day of January, 1939."

April 1, 1939, after final submission of the motions by both parties, the trial court granted a new trial and April 10, denied the motion for judgment *non obstante veredicto*, thus:

"This cause having been heretofore submitted to the court upon the motion of the defendants and each of them for judgment notwithstanding the verdict, and having been briefed and argued verbally by respective counsel, and submitted to the court, and the court being fully advised in the premises, and the court having heretofore and on the 1st day of April, 1939, entered order granting a new trial in this case,

"IT IS ORDERED BY THE COURT that the motions of the defendants Charles R. Lowe, Associated Indemnity Cor-

poration, a corporation, and New York Casualty Company, a corporation, be, and the same are severally denied.

"DATED April 10th, 1939.

"GUY STEVENS,

"District Judge."

Appellant's first assignment of error is that because the court granted the new trial before denying the motion for judgment *non obstante veredicto*, she was thus prejudiced:

"1. If the judgment *non obstante* had been granted, a new trial would be obviated, and even if an appeal were taken, it would be on the merits, eliminating the expense of retrial and of two appeals.

"2. If the order granting a new trial was properly entered, the motion for judgment *non obstante* still remains undetermined, as appears probable, by exhaustion of the jurisdiction of the court.

"3. The appellant is taken off her guard and by surprise, having never been informed by any notice, order or intimation, that the court proposed to pass upon the motion for a new trial without the consent of counsel for either side, before determination of the motion for judgment notwithstanding the verdict."

Irrespective of when, with relation to each other, the motion for judgment notwithstanding the verdict was denied and the motion for a new trial granted, the decisive question involving the merits of the controversy, namely, whether the order of commitment issued out of the District Court of the Third Judicial District was sufficiently fair and definite upon its face to justify respondent Lowe in holding appellant in the hospital after April 29, 1933, and until he retired as medical superintendent, thereby constituting a defense and absolving him from the charge of false imprisonment, is before us for complete review, so there is no merit in appellant's first two contentions as urged.

With regard to the third, that is, that appellant was taken by surprise, having never been informed that the trial court intended to pass on the motion for a new trial the record is directly to the contrary, and appellant's contention in this regard is frivolous:

"Minute

"In this matter the motions for judgment notwithstanding the verdict, for a new trial, and to retax costs, all filed on behalf of the Defendants, came on regularly to be heard at said Court at 2:00 P. M. on the 7th day of February, A. D. 1939; S. T. Lowe, Esq., and J. H. Anderson Esq., appearing on behalf of the defendants and A. S. Dickinson Esq., and Ariel Crowley Esq., appearing on behalf of the plaintiff, the Court having heard the oral arguments of counsel, it was agreed between all counsel appearing that they desired to submit written briefs upon said motions; it was thereupon ordered that said motions be submitted upon written briefs to be filed by counsel for the respective parties.

"Recorded February 9th, 1939."

### "ORDER GRANTING A NEW TRIAL

"This cause having been heretofore submitted to the Court, upon the defendant's Motion for a new trial herein, S. T. Lowe, Esq., and J. H. Anderson, Esq., appearing on behalf of the defendants and in support of said Motion for a new trial and A. S. Dickinson, esq., and Ariel Crowley, Esq., appearing on behalf of the plaintiff and in opposition to said Motion, and the Court having heard the arguments of counsel and having taken the matter under advisement for the submission of Briefs and Briefs having been submitted by the respective attorneys for the respective parties, and the Court having fully considered the same and being fully advised in the law and the premises,

"IT IS HEREBY ORDERED that the Motion of the defendants for a new trial herein, be, and the same is hereby, granted and that the verdict of the Jury and the Judgment of the Court entered thereon be, and the same are, vacated and set aside.

### "ORDER DENYING MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

"This cause having been heretofore submitted to the court upon the motion of the defendants and each of them for judgment notwithstanding the verdict, and having been briefed and argued verbally by respective counsel, and sub-

mitted to the court, and the court being fully advised in the premises, and the court having heretofore and on the 1st day of April, 1939, entered order granting a new trial in this case,

"IT IS ORDERED BY THE COURT that the motions of the defendants Charles R. Lowe, Associated Indemnity Corporation a corporation, and New York Casualty Company, a corporation, and each of them, for judgment notwithstanding the verdict be, and the same are severally denied.

"GUY STEVENS,
"District Judge."

We now proceed to the sole decisive question, the interpretation of the order of commitment of April 29, 1931.[1]

---

[1] "Order of commitment:

"In the *District* Court of *The Third Judicial District Ada* County, State of Idaho. In the matter of the examination and commitment of *Mary Hanson* ~~an insane person~~ for Inebriety

WHEREAS, *Mary Hanson*, having this day been brought before me, judge of the *District Court of the Third Judicial District Ada* County, State of Idaho, for examination on the charge of ~~insanity~~; Inebriety *J. R. Good* having been duly appointed attorney to represent the accused; and I having heard the testimony of *Maybelle Keyser* and *Dr. T. N. Braxton* Witnesses acquainted with the accused during the time of alleged insanity, and Doctors *T. N. Braxton* ~~and~~ ———, graduates of medicine, after having heard the testimony, and after personal examination of the accused in open Court, having made the certificate by law required; and being myself satisfied that she is ~~insane and~~ so far disordered in mind as to injure health, person or property, and after satisfactory proof as to the truth of all set forth in the certificate of the said physicians; THEREFORE, It is ordered that she be confined in the insane asylum at *Blackfoot*, Idaho and the Sheriff of *Ada* County is hereby ordered to deliver the said person to the agent appointed by the medical superintendent for the conveyance of such ~~insane~~ person to the asylum.

(signed) CHAS. F. KOELSCH
District Judge

DATE *Apr. 29, 1931*

"FINANCIAL STATEMENT

"(See Chapter 51, Idaho Compiled Statutes, 1919, as amended.)

Concerning the financial condition of *Mary Hansen* I have to report as follows:

The applicable fundamental rules of law are that a ministerial officer sued for false imprisonment is protected by process fair on its face, issued by a court having jurisdiction of the person and jurisdiction of the subject matter on account of which the person is to be confined, justifying its ordering the confinement of the person on the charge, which was, or intended to be, or was attempted to be stated in the process. (*Jennings v. Thompson,* 54 N. J. L. 55, 22 Atl. 1008; *State v. Weed,* 21 N. H. (1 Foster) 262, 53 Am. Dec. 188;

ASSETS: $ *none* PENSIONS: $ *none* LIABILITIES $ *none* I also find that —— whose post office address is —— —— County of —— State of ——, bound by law to support or has been maintaining said ——.

I find the financial condition of said *Mary Hansen*

ASSETS: $ *none* LIABILITIES $ *none*

I THEREFORE ORDER: That said *Mary Hansen* be received at the insane asylum, to be supported by *State*

Address ——

This under seal of said Court this *29th* day of *April 1931*

(Signed) CHARLES F. KOELSCH, Judge

"INSANE COMMITMENT—CERTIFICATE OF EXAMINING PHYSICIANS

"In the matter of the examination of *Mary Hansen* an insane person.

State of *Idaho,* County of *Ada, T. N. Braxton* and —— being duly sworn, each for himself, deposes and says, that he is a legally qualified physician; that at the request and in the presence of *C. F. Koelsch* Judge of the *District* Court of *Ada* County, he has heard the testimony of the witnesses and personally examined the said *Mary Hansen* in reference to the charge of insanity, and does find that *she* is ~~insane~~ inebriet

NOTE: The examining physicians will please answer the following questions as fully as they can, as this certificate affords all the reliable information in regard to the previous history of the patient that the Superintendent of the Asylum can obtain. Patient's name? *Mary Hansen* Residence? *1302 Ridenbaugh, Boise, Ida* Place of birth? *Mo.* Occupation? *domestic* Height? *5ft ½* Weight? *135* Color of hair *gray* Color of eyes? *black* Date of birth? *Nov. 1–1868* Race? *white* Education? *3 grade* Religion? *none* Number of Children living and number dead? *3 living 1 dead* Age when first child was born? *21* Age of youngest child? *23* Any deformed or defective children?

*Hinchman v. Richie* (Penn.) 1 Brightly, 143; *Campbell v. Hyde,* 92 Ark. 128, 122 S. W. 99; *Templeman v. Jeffries,* 172 Ga. 895, 159 S. E. 248; *Brown v. Hadwin,* 182 Mich. 491, 148 N. W. 693, L. R. A. 1915B, 505; *King v. Robertson,* 227 Ala.

*None* How long in Idaho? *12 years* How long in U. S.? *All life* Citizen of U. S.? *yes* Is patient a legal resident of Idaho *yes* If ever confined in an institution, where and when? —— Name and birthplace of father and age? *William Weemes, Mo. 63* Maiden name and birthplace of mother, and age? *Myra Stripling 62* Cause of death of father? *paralysis* Cause of death of mother? *Tumor abdomen* What relatives have been insane, epileptic, defective or criminal *None* Has patient or parents had syphilis? *none* Is patient married or single, divorced or widowed? *divorced* Patient's habits? *use alcohol* Epileptic? *No* Is patient suicidal or homicidal? *no* Number of attacks? —— Give details of previous attacks *Very frequently takes Alcohol & Varinal to excess* Assign cause of attack. *As above* Earliest symptoms noted and mode of development? *Dont know* Military record? —— Sleep? *Irregular* Memory? *Irregular* Headache or neuralgia? *None* Delusions, character of; are they fixed or changeable? *None at present* Hallucinations and illusions, whether of sight, hearing, taste or smell? *None at present* Is patient noisy, restless, destructive or depressed? *Depressed at times* Brief history of diseases or injuries *None* Age when menses appeared? *15 yrs* Amount and character before and since insanity appeared? *Av* If past change of life, was it sudden or gradual, and symptoms? *Sudden* Natural temperament and mental capacity? *Av* Is there a loss or increased knee jerk, visual or pupilary defects? *No change* To what extent has patient used alcohol, opium or tobacco? *Alcohol & Varinal* Are there bruises, scars or other evidence of present injury? *No* Has patient been exposed to any contagion? *No* Have there been any convulsive seizures? *No* Give history with dates of previous 'strokes' or paralyses? *Stroke two years ago in June* What treatment has been employed? *None* Is patient member of any lodge? *No* Names and addresses of relatives, guardian or friends to be notified in case of death, sickness, or discharge from asylum, and who will furnish clothing or other necessary articles? *Mrs. Augusta Kirby 1302 Ridenbaugh St. Boise Daughter* Remarks: *Alcohol & Varinal adict*

"(Signed) T. N. BRAXTAN, M. D.
"—————————, M. D.
"Subscribed and sworn to before me this *29th* day of *April 1931*
"(Signed) J. R. GOOD Attorney
"(Signed) CHAS. F. KOELSCH, Judge"

378, 150 So. 154; *Burlingame v. Traeger*, 101 Cal. 365, 281 Pac. 1051.)

▋ Though defective, irregular or imperfect, if not void but merely voidable, process so issued will protect against a suit for damages for false imprisonment. (*Peterson v. Merritt*, 25 Ida. 324, 137 Pac. 526; *Waters v. Barclay*, 57 Ida. 376, 64 Pac. (2d) 1079.)

Appellant takes the position the commitment was for inebriety or dipsomania under section 64-216, I. C. A., and that by the limitation in such section, to confinement for two years, though it was not so stated in the commitment, respondent Lowe had no right or authority to hold her after the two years had transpired, i. e., after April 29, 1933.

Respondents on the other hand take the position that appellant was committed under sections 64-201 to 64-210, I. C. A., inclusive, as being so far disordered in mind as to endanger health, persons or property, and that respondent Lowe was thus justified in holding her until she was cured or otherwise properly discharged.

Appellant's complaint does not charge she was not insane when committed or that she was later cured but not immediately released and appellant does not base her cause of action on respondent Lowe's lack of skill or negligence in treating her; her sole contention being that the commitment being for inebriety only, did not justify her detention from April 29, 1933, until October 30, 1937, after Dr. Lowe retired as medical superintendent June 28, 1937. (*Springer v. Steiner*, 91 Or. 100, 178 Pac. 592, 597.)

▋ The general rule is that a ministerial officer need not look behind the process which comes to him. (*Peterson v. Merritt, supra; Phillips v. Morrow*, 213 Ala. 139, 104 So. 260, 40 A. L. R. 285; *Brown v. Hadwin*, 182 Mich. 491, 148 N. W. 693, L. R. A. 1915B, 505; *State v. Weed*, 21 N. H. 262, 53 Am. Dec. 188; *Langen v. Borkowski*, 188 Wis. 277, 206 N. W. 181, 43 A. L. R. 622; *Marks v. Sullivan*, 9 Utah, 12, 33 Pac. 224, 20 L. R. A. 590; *Ressler v. Peats*, 86 Ill. 275; *Jones v. Foster*, 43 App. Div. 33, 59 N. Y. Supp. 738; *Rowe v. Reneer*, (Ky.) 99 S. W. 250, 30 Ky. L. Rep. 545; annotation, 51 L. R. A. 193.)

There are the following integral *indicia* favoring the contention that appellant was committed for inebriety: In the first recital of the commitment the words "an insane person" are stricken and the words "for Inebriety" written in. In the second paragraph the word "insanity" is stricken and the word "Inebriety" inserted. In the third paragraph the words "insane and" are stricken. In the physician's certificate the word "insane" is stricken and the word "inebriet" inserted. No statement is included in the physician's statement that he believes appellant to be so far disordered in mind as to endanger health, person or property, as contemplated by sec. 64–207, I. C. A., but that she was addicted to the use of alcohol and "varinal." Also the statement that she had no delusions, hallucinations or illusions. There is, however, no showing *pro* or *con* that a person could not be so disordered in mind as to be dangerous to health, person or property without having delusions, hallucinations or illusions. It is doubtful, therefore whether the last item contributes or adds anything one way or the other.

On the other hand there is the following *indicia* that the commitment was not for inebriety or dipsomania but for mental disorder under sections 64–201 to 64–210, I. C. A. In the first place the commitment affirmatively shows appellant was represented by an attorney, as required by section 64–202 and not by section 64–216, I. C. A. Second, the district court declared he found her "so far disordered in mind as to be dangerous to health, persons, or property," the sole requirement under section 64–209, I. C. A., and did not find or state she was so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control or subject to dipsomania or inebriety as required by section 64–216, I. C. A. There is no statement in the commitment as to the period or time of commitment, that is, two years or less as required by section 64–216, I. C. A. Furthermore, the first paragraph and the first portion of the second paragraph of the order of commitment are not in the nature of a finding of the district court but are recitals of the charge on which she had been ordered to the district court by the justice of the

peace for examination. Whatever irregularity or lack or difference in this particular would not bind respondent Lowe.

" . . . . Process may have been procured through fraud or perjury, or a court which has ordered it may have committed the most serious errors or have exceeded its jurisdiction after once having exercised that jurisdiction, but if these facts do not appear on the face of the process, or, in other words, if the process is regular on its face and comes from a lawful authority, the officer may execute it and legally justify his action. It would be a most dangerous thing if every peace officer should be obliged to examine into the merits of the case and every step taken by the officer who issued process before going about his duty to serve and execute such process. When an officer gets a warrant of arrest or a commitment, he must know whether the court who issues the process has jurisdiction over the offense named in the process and authority to deal therewith and issue warrants and commitments and process thereunder."

*Peterson v. Merritt, supra,* at p. 332, of 25 Ida.

The district court has jurisdiction to commit, for insanity or a disordered mind (*In re Hinkle,* 33 Ida. 605, 196 Pac. 1035). On a charge of false imprisonment the sufficiency of the commitment is not to be tested with the same strictness as on an appeal or *habeas corpus,* and the mere fact that in such proceedings or any other, the commitment herein might be held bad does not militate against its efficacy as protection from liability in a suit for false imprisonment. (*Peterson v. Merritt, supra.*)

The statutes (secs. 64–201 to 64–210, I. C. A.), so far as the commitment is concerned, make no distinction between persons committed because insane and the class of persons so far disorderd mentally as to be dangerous to health or property (not including idiocy, imbecility or feeble mindedness, sec. 64–212, I. C. A.) whether induced by over-indulgence in narcotics or stimulants or otherwise.

Section 64–202, I. C. A., originated in 1923 as section 1177A added to the Compiled Statutes. Prior to that time section 64–201 as now extant, coming down to us from the Statutes

of 1887 evidently based on section 2210 of the California Political Code of 1872, made no distinction between an insane person and a person so far disordered in mind as to be dangerous to health, person or property. By making the distinction in section 64–202, I. C. A., the legislature must have intended something, and the committing part of the commitment herein contains all that is required by section 64–209, I. C. A., while it did not contain any of the requirements of section 64–216, I. C. A. Thus the statute itself is somewhat ambiguous and tends to lead to confusion which, however, but adds another reason why respondent should not be held liable if he misconstrued the force and effect of the commitment. In other words, the commitment, while not a model and not as clear as it could and should have been and not without ambiguity, is as definite as the statutory requirement necessary to hold one so disordered in mind as to be dangerous to health, person or property.

We fully recognize the unfortunate persons held at the State Mental Hospitals should receive the utmost consideration and the committing court should clearly and definitely state for what condition they are committed and the superintendents of the institutions should be on the alert to ascertain what their condition is when received and for what condition they were committed, in order that inmates shall not be held for a condition other than that for which they were committed or held after the term for which they were committed has expired, or after they have recovered or perhaps been found to have never been in such condition they should have been committed.

Respondent Lowe, upon receiving appellant at the hospital, was under the duty of determining from the face of the commitment what appellant was committed for and for what mental condition and length of time he should retain her in his custody and he owed a duty not only to appellant but likewise to the public.

The commitment upon its face was capable of reasonably being construed by respondent Lowe to be authority to receive and hold appellant as a person so disordered in mind as to be dangerous to health, person or property and

not as a dipsomaniac or inebriate, and therefore respondents are not liable for damages. (*Brinkman v. Drolesbaugh,* 97 Ohio, 171, 119 N. E. 451, L. R. A. 1918F, 1132; *Burnett v. Prince,* 272 Mo. 68, 197 S. W. 241; *Campbell v. Hyde, supra; State v. Weed, supra; Jennings v. Thompson, supra;* 25 C. J. 477, sec. 43; *Phillips v. Morrow, supra; Douglass v. Stahl,* 71 Ark. 236, 72 S. W. 568; *Clewley v. Brown, Thomson, Inc.,* 120 Conn. 440, 181 Atl. 531.)

The court therefore did not err in granting respondents' motion for a new trial since upon its face the commitment, though ambiguous, was sufficiently fair to protect respondents, and the order of the trial court granting a new trial is affirmed.

Costs awarded to respondent.

Morgan and Holden, JJ., concur.

MORGAN, J., Concurring.—The dissenting opinion of our chief justice prompts me to state the reasons why I concur in the opinion of Mr. Justice Givens.

The statute governing this case is chapter 2 of title 64 of our code. That chapter, commencing with sec. 64–201, extending to and including sec. 64–215, relates to the arrest, hearing and commitment of persons so far disordered in mind as to endanger health, persons, or property, sometimes referred to as insane persons. Section 64–216, relates, exclusively, to persons so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or who are subject to dipsomania or inebriety. It is necessary, in order that we may have a correct understanding of this case, that we keep in mind the distinctions which exist between sec. 64–216 and the sections of the chapter which precede it. Words appearing in italics are not so printed in the code. They are italicized here for emphasis.

"64–201. Whenever it appears by affidavit to the satisfaction of a magistrate of the county that any person within the county is *so far disordered in his mind as to endanger health, persons, or property,* he must issue and deliver to some peace officer for service a warrant, directing that such

person be arrested and taken before any judge of a court of record within the county for examination.

"64–202. Whenever a person is charged with *being so far disordered in his mind as to endanger health, persons, or property or shall be charged with being insane,* it shall be the duty of the judge before whom the accused person is brought for examination to immediately ascertain from such person or otherwise if said person so accused or charged is represented by an attorney and the said judge shall not proceed with any examination of said accused until such person is so represented; and if such person is not represented by an attorney, before any further proceedings shall be had it shall be the duty of said judge to immediately designate and appoint a licensed and practicing attorney of the county in which such examination is being had who has been a licensed and practicing attorney for not less than three years in Idaho immediately preceding his appointment, to defend said person so accused of *being disordered in his mind or otherwise insane;* and it shall be the duty of said attorney so appointed to immediately examine into the merits of said charge or affidavit specified in section 64–201 and to defend the rights of the person so accused; and no person shall, after the taking effect of this section, be committed to an insane asylum unless the commitment or the record of the proceedings affirmatively shows that such person was represented by counsel as herein specified, and the judge shall have no jurisdiction to commit a person to the insane asylum unless this section has been complied with. If the person accused of being disordered in his mind is unable to pay for the services of said attorney the judge, before whom said examination is had, shall allow such appointed attorney a sum not less than ten dollars nor more than twenty-five dollars which shall be certified by the judge to the county commissioners; and it shall be the duty of said county commissioners to audit and allow such claim: provided, however, that in case of a protracted trial the judge may, in his discretion, allow a further compensation not to exceed the sum of fifty dollars: provided, however, that nothing in this section shall be construed to prevent the accused

person from employing any attorney at his own expense that he may see fit.

"64–209. The judge, after such examination and certificate made, if he believes the person so far disordered in his mind as to endanger health, person, or property, must make an order that he be confined in the insane asylum."

It will be observed that sec. 64–202 provides for the examination of one charged with being either *so far disordered in his mind as to endanger health, person, or property, or charged with being insane;* that at such examination the person so charged shall be entitled to be represented by an attorney and no examination shall be had unless he is so represented. Furthermore, he cannot be committed to an asylum unless the commitment, or the record of the proceedings, affirmatively shows that he was represented by counsel. After the examination prescribed in sec. 64–202 the judge, if he believes the person examined to be *so far disordered in his mind as to endanger health, person, or property,* must make an order that he be confined in the insane asylum. That section makes no provision for fixing the duration of the confinement.

Let us compare the foregoing sections with 64–216. It provides:

"64–216. Whenever it appears by affidavit to the satisfaction of a magistrate of the county, that any person within the county *is so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or is subject to dipsomania or inebriety,* he must issue and deliver to some peace officer for service a warrant directing that such person be arrested and taken before the district court of the county, or the judge thereof, for a hearing and examination on such charge. Such officer must thereupon arrest and detain such person until a hearing and examination can be had. . . . . He must be taken before the district court, or the judge thereof, to whom said warrant and affidavit of arrest must be delivered to be filed with the clerk. . . . . The hearing and examination shall be had in compliance with the provisions of section 64–203 to 64–207. . . . . The judge, after such hearing and examination, *if he believes the person is so far addicted to the intemperate use of narcotics or stimulants*

as to have 'lost the power of self-control, or is subject to dipsomania or inebriety, must make an order that he be confined in one of the state insane asylums which shall be designated in said order, . . . . Such order and statement shall be in substantially the form provided by section 64–209 for the commitment of insane persons. *The said court, or the judge thereof, shall commit such person for a definite period, not to exceed two years,* but provided that he may be paroled or released under the same rules and conditions that the insane are paroled and released. . . . . ''

In order to justify the commitment of one accused, pursuant to the provisions of sec. 64–216, the judge must be convinced that such person is *''so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control or is subject to dipsomania or inebriety.''* If he is so convinced it becomes his duty to *''commit such person for a definite period, not to exceed two years.''* That section does not provide for representation of the accused at public expense.

With these statutory provisions clearly in mind, an examination of the commitment shows appellant was brought before the district court for examination on the charge of inebriety; that an attorney was appointed to represent her; that witnesses were sworn and examined, whereupon the court found: ''and being myself satisfied that she is so far disordered in mind as to injure health, person, or property, and after satisfactory proof as to the truth of all set forth in the certificate of the said physicians; THEREFORE, It is ordered that she be confined in the insane asylum at Blackfoot, Idaho, and that the Sheriff of Ada County is hereby ordered to deliver the said person to the agent appointed by the medical superintendent for the conveyance of such person to the asylum.''

While the order of commitment shows appellant was brought before the court on a charge of inebriety it also shows that, after a hearing had, she was committed to the asylum because she was *so far disordered in mind as to endanger health, person, or property.* In receiving and detaining appellant in the insane asylum the superintendent followed the clear mandate of the order of commitment, which the court had jurisdiction to issue, and is protected thereby.

Something is said in the dissenting opinion to the effect that the law presumes all persons sane until the contrary is shown. That rule does not apply to one confined in an insane asylum, pursuant to an order of commitment, issued by a court of competent jurisdiction, based on a finding that she is so far disordered in her mind as to endanger health, person, or property.

Justice Holden authorizes me to say he concurs in the views herein expressed.

AILSHIE, C. J., Dissenting.—I am unable to find the slightest justification in the record of this case for holding that appellant was examined and committed for *insanity*, under secs. 64–201 to 64–210, I. C. A. It is written in glaring terms all over the record of the original proceedings, that appellant was held on the charge of *inebriety*. The original complaint made before a justice of the peace of Ada county was on a printed form and charged

"that the said Mary Hanson has for a long period been subject to the intemperate use of intoxicating liquors;"

and then interlined on the typewriter are the following words: "and other narcotics, to-wit, Veronol and such drugs"; and then follows the printed form "that *she* has lost the power of self-control and is subject to dipsomania and inebriety to such an extent that —— is so far disordered in mind as to endanger health, persons and property, to-wit: *her* own health and property, and the property, health and persons of"; and this is followed by the typed words "her family and other persons."

Upon that complaint the justice of the peace issued to the police officer, who made the affidavit, his warrant of arrest, reading in part as follows:

"A complaint, upon oath, having been this day laid before me by *Andy Robinson* stating that *Mary Hanson was so addicted to the use of intoxicating liquors and drugs, to-wit Veronol and such drugs, that she has lost the power of self-control and that she resides in Boise, Ada County, Idaho*, thereof, you are therefore commanded to forthwith arrest the above named *Mary Hanson* and bring *her* forthwith, *before the*

*Judge of the District Court of the Third Judicial District* in said County of Ada.''
and italicized part of which was typewritten in the blank space left for such purpose. Appellant was thereupon arrested and taken before the district judge, Honorable Charles F. Koelsch, who caused subpoenas to be served on Dr. T. N. Braxtan and Mabel Keyser, to appear before him and testify concerning appellant's condition. After hearing the testimony and making an examination, Dr. Braxtan certified, among other things, ''that at the request, and in the presence, of *C. F. Koelsch,* Judge of the *District* Court of *Ada* County, he has heard the testimony of the witnesses and personally examined the said *Mary Hansen* in reference to the charge of insanity, and does find that *she* is''; this is followed by the word ''insane'' which is *crossed out* and instead thereof the word ''inebriet'' is written with the typewriter.

Farther along in the certificate, following the words, ''Patient's habits?'' were typewritten the words ''use alcohol.'' Farther on, in answer to the words ''Give details of previous attacks,'' written with pen and ink, are the words, ''Very frequently takes Alcohol and Varinal to excess.'' Farther along, among the questions to be answered, the printed word ''insanity'' is crossed out. In the very last line of the examining physician's certificate, following the printed words ''Remarks,'' and evidently written with pen by Dr. Braxtan, are these words: ''Alcohol and Varinal adict.''

These things all appear from the original order of commitment and physician's certificate, as set out in footnote 1 to Mr. Justice Givens' opinion, wherein he italicizes the words that have been inserted with pen or by typewriter; and the words crossed out are also so indicated. It should also be remembered that this ''Order of Commitment,'' ''Financial Statement,'' and ''Insane Commitment—Certificate of Examining Physicians,'' are all on three printed pages of *one folded sheet* and, as indicated by the title to the physician's certificate, were intended for use on examination and commitment of an *insane* person and were never prepared nor intended for use in commitment of *inebriates* and persons ''so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self control, or is subject to dip-

somania or inebriety," as provided for by sec. 64–216. It is apparent all over the face of this document that it was intended to so correct and interline it as to make it applicable to a case where the commitment was being made for inebriacy, under sec. 64–216, I. C. A.

The very first recital in the district judge's order is as follows: "In the Matter of the examination and commitment of Mary Hanson *for Inebriety,*" the words "an insane person," being stricken out. The order then proceeds: "WHEREAS, Mary Hanson, having this day been brought before me, judge of the District Court . . . . on the charge of"; here the word "insanity" is stricken out and "Inebriety" is written in. "J. R. Good having been duly appointed attorney to represent the accused;" etc. The words quoted in the majority opinion are in the *printed form* and are included in the following clause: "and being myself satisfied that she is"; here the words "insane and" are stricken out; "so far disordered in mind as to injure health, person, or property."

Here this woman was committed under a statute (sec. 64–216) which provides that the maximum term of detention is *two years*; and notwithstanding these facts and this statute, she was detained 6½ years and would probably still be held, so far as anything appears to the contrary, had she not sued out a writ of *habeas corpus.* The rule of law governing this case is clearly and correctly stated by this court in *Peterson v. Merritt,* 25 Ida. 324, 332, 137 Pac. 526. An officer is protected in acting upon the mandates of a writ, fair and regular on its face; but he must keep within the terms of the mandate. He acts outside the mandates of the writ at his peril.

I cannot understand how it has been possible for anyone, layman or physician, to read this "Order of Commitment" and the attached certificate of the doctor, who made the examination and diagnosis, to which the judge's "Order of Commitment" is attached and refers, without being at once satisfied and convinced that the commitment was for "inebriety." It appears in plain terms all through the examination certificate of Dr. Braxtan, as well as from the commitment by Judge Koelsch, that appellant was being tried and committed for "inebriety,"—the excessive use of "alcohol & varinal."

In order that anyone, who may be interested in reading this case and the court's holding, may see it as it is, I am including a photostat copy of Judge Koelsch's "Order of Commitment" which is as follows:

2183 Order of Commitment to Insane Asylum

PRINTED AND FOR SALE BY THE CAXTON PRINTERS, CALDWELL, IDAHO

## ORDER OF COMMITMENT

In the _Seventh Judicial District_ Court of the _Third Judicial District_ of _Ada_ County, State of Idaho.

In the matter of the examination and commitment of _Mary Hanson_ _for insane person_ _an insane person_

WHEREAS, _Mary Hanson_ having this day been brought before me, judge of the _Seventh Judicial District_ Court of the _Third Judicial District_ of _Ada_ County, State of Idaho, for examination on the charge of _insanity_, _Snelling_

_J. R. Gray_ having been duly appointed attorney to represent the accused; and I having heard the testimony of _Mayfield Keyser_ and _Dr. F. M. Braden_ having heard _F. M. Braden_ witnesses, acquainted with the accused during the time of alleged insanity, and Doctors _____, graduates of medicine, after having heard the testimony, and after personal examination of the accused in open Court, having made the certificate by law required; and being myself satisfied that She is so far disordered in mind as to injure health, person, or property, and after satisfactory proof as to the truth of all set forth in the certificate of the said physicians; THEREFORE, It is ordered that She be confined in the insane asylum at _Blackfoot_, Idaho, and that the Sheriff of _Ada_ County is hereby ordered to deliver the said person to the agent appointed by the medical superintendent for the conveyance of such person to the asylum.

Date _Apr. 29_, 19_31_.

_Isaac L. Clark_ _District_ Judge

The printed lines on the form used by the judge (the common form used in insanity cases), stating that the person examined is "so far disordered in mind as to be dangerous to

health, person, or property," quoted by Mr. Justice Givens, is no more applicable to an insanity commitment than it is to an inebriacy or dipsomania case. In cases of inebriacy or drunkenness, or dipsomania, where the patient has reached the stage that he must be confined for *treatment or safety,* and the law takes hold of him, he is certainly "disordered in mind" and "dangerous" to his own "health" or to "persons or property." The very language of the statute (sec. 64–216) contemplates just such a condition, wherein it says:

"Whenever it appears by affidavit to the satisfaction of a magistrate of the county, that any person within the county *is so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or is subject to dipsomania or inebriety,* he must issue and deliver to some peace officer for service a warrant directing that such person be arrested and taken before the district court of the county, or the judge thereof, for a hearing and examination on such charge." (Italics supplied.)

Dr. Hammond, in considering the subject of Inebriety (1 Legal Medicine and Toxicology, 2d ed., p. 476) says:

"From a study of these different forms of inebriety the conclusion is obvious that the responsibility of the inebriate varies somewhat according to the class in which he belongs, and that the responsibility of different individuals in the same class depends to a great extent upon the degree of their inebriety. *The inebriate is brought into relations with the law either because he has injured others or is about to do so, or because he needs protection or redress himself.*" (See, also, 4 Nelson's Loose Leaf Ency., p. 65B.)

The majority opinion contains the following very remarkable statement: "Appellant's complaint does not charge she was not insane when committed or that she was later cured but not immediately released and appellant does not base her cause of action on respondent's lack of skill or negligence in treating her; her sole contention being that the commitment being for inebriety only, did not justify her detention from April 29, 1933 until October 30, 1937, . . . . " I have always understood that *the law assumes every person sane* until the contrary is shown. (22 Corpus Juris, sec. 81, p. 146; 20 Am. Jur., sec. 215, p. 213.) Insanity was purely a *matter*

*of defense* in the present action, unless we assume in the outset, as the majority opinion seems to do, that the defense are correct in their contention and the commitment was for *insanity*.

Finally, it is suggested by the majority opinion, as one of the *"indicia"* of the case, that, "the commitment affirmatively shows appellant was represented by an attorney, as required by 64–202 and not by 64–216 I. C. A.'' She *was* represented by counsel and the Inebriacy Statute (sec. 64–216) evidently intended, and meant, that an accused person should also be so represented, else why does the statute require the district judge to "inform him of the charge against him, and inform him of his rights to make a defense to such charge and produce any witnesses in relation thereto.'' It further provides that the judge shall fix the "time and place for the hearing and examination as will give a reasonable opportunity for the production and examination of witnesses.''

Now I wonder what use the legislature thought it would be to an unfortunate woman charged with being "so addicted to the use of intoxicating liquor and drugs . . . . that she has lost the power of self control,'' to allow her "reasonable opportunity'' to produce her witnesses and present her side of the case if she is not to have an attorney. It is true that in inebriacy cases the statute does not *enjoin the duty* upon the judge of *appointing* an attorney to represent the accused for the evident reason that an inebriate may be *mentally* and *financially* competent to employ his own counsel, whereas an insane person is not presumed, in any case, to be capable of so doing. But under the general law, there would be as much necessity for the court appointing an attorney to represent an *indigent inebriate* as there would be for appointing an attorney to represent an *indigent highwayman or thief* on trial for his liberty; and the latter duty is specially enjoined by statute. (Sec. 19–1412, I. C. A.) Certainly the liberty of the citizen is as sacred and dear to him, under the constitution and statutes, when charged with inebriacy, dipsomania, or the drug habit, as when charged with chicken stealing, burglary, or assault with a deadly weapon.

Consequently, I am unable to consider the fact that appellant was represented by counsel as any *"indicia"* whatever

that she was committed as *insane* but merely that she was represented by counsel, to which she was clearly entitled, whether charged with insanity, inebriacy, or murder.

It seems to me that a mere cursory glance at the Order of Commitment, as well as a careful study of the Order, leads to the inevitable conclusion that appellant was committed for inebriacy.

The judgment should be reversed.

Budge, J., concurs in this dissent.

Petition for rehearing denied.